1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CSREEDER, PC**
Elan Bloch, Bar No. 284530
elan@csrlawyers.com
Zachary D. Ward, Bar No. 327618
zach@csrlawyers.com
11766 Wilshire Blvd., Suite 1470
Los Angeles, CA 90025
Phone: (310) 861-2470
Facsimile: (310) 861-2476

**MINC LLC**
Daniel A. Powell (Admitted *Pro Hac Vice*)
dpowell@minclaw.com
Nathan P. Woodward (Admitted *Pro Hac Vice*)
nwoodward@minclaw.com
200 Park Avenue, Suite 200
Orange Village, Ohio 44122
Ph: (216) 373-7706
Fax: (440) 792-5327

*Attorneys for Defendants,*
*Megan Kelley and Jeff Robinson*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| LIVING VEHICLE, INC., | Case No: 2:22-cv-06226-RGK (ASx) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PURSUANT TO C.C.P. 425.16 OR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)** |
| v. | |
| MEGAN KELLEY aka MEGAN GRAHAM and JEFF ROBINSON, | |
| Defendants. | |

Date:       **December 28, 2022**
Time:       **9:00 a.m.**
Place:      **Roybal Federal Building and United States Courthouse Courtroom 850, 8th Floor 255 East Temple Street Los Angeles, CA 90012**

**Complaint Filed:       August 31, 2022**
**FAC Filed:       September 7, 2022**

/ / /
/ / /
/ / /
/ / /

MEMORANDUM OF POINTS AND AUTHORITIES

*Sidebar:* CSREEDER, PC ATTORNEYS AT LAW LOS ANGELES

## **TABLE OF CONTENTS**

**I.   INTRODUCTION**.................................................................................1

**II.  FACTUAL BACKGROUND** .............................................................2

   **A.  The Parties' Transaction**...............................................................2

   **B.  It Is Unclear from the FAC What False Statements Plaintiff Alleges**...............4

**III.  ARGUMENT**...................................................................................6

   **A.  Fed. Rules Civ. Proc., Rule 12(b)(6) Standard of Review**....................6

   **B.  Anti-SLAPP Standard of Review**...................................................7

   **C.  Plaintiff's Claims Fail As A Matter of Law Under Rule 12(b)(6) and Are Barred by California's Anti-SLAPP Law**...............................................8

     **1.   Each of Plaintiff's Claims Arises from Protected Speech**...............8

     **2.   Plaintiff Cannot Demonstrate Probability of Prevailing**..............10

     **3.   Plaintiff's Defamation Claim Fails as a Matter of Law** ...............10

       **a.   The Allegedly Defamatory Statements Are Opinions** ...............10

       **b.   The Allegedly Defamatory Statements Are True**.....................11

       **c.   Plaintiff Must, and Cannot, Show Actual Malice** ...................13

       **d.   Plaintiff Conflates Defamation with Trade Libel** .................14

     **4.   Plaintiff's Trade Libel Claim Fails as a Matter of Law** ..............14

     **5.   Plaintiff's Breach of Confidentiality Claim Is Incognizable**.........15

**IV.  CONCLUSION: THE COURT SHOULD DISMISS THIS ACTION AND NOT GRANT LEAVE TO AMEND**.............................................................17

i

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007).....................................7

*Bikkina v. Mahadevan*, 241 Cal.App.4th 70, 82-83, 193 Cal. Rptr. 499 (2015) .................9

*Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002) ..........................7

*Erlich v. Etner*, 224 Cal.App.2d 69, 73-94 (1969) ..................................................14

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974) ......................................1, 12

*In re Facebook Privacy Litig.*, 791 F.Supp.2d 705, 717 (N.D. Cal. 2011) .......................16

*John Doe 2 v. Superior Court*, 1 Cal.App.5th 1300, 1313 (2016) ................................1, 10

*Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) ......................................16

*Kronemyer v. Internet Movie Data Base, Inc.*, 150 Cal.App.4th 941, 946, 59 Cal.Rptr.3d 48, 52 (2007).....................................................................................................7

*Lacoste v. Keem*, C.D. Cal. No. 2:20-cv-02323, 2020 U.S.Dist. LEXIS 153779, *5 (June 23, 2020) ....................................................................................................9

*Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 270 (2013) .....................................13

*McGarry v. University of San Diego*, 154 Cal.App.4th 97, 112 (2007)...........................10

*Melaleuca, Inc. v. Clark*, 66 Cal.App.4th 1344, 1358 (1998) .....................................13, 14

*Mendoza v. Wichmann*, 194 Cal.App.4th 1430, 1447 (2011) ....................................9

*Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).................................7

*Navellier v. Sletten*, 29 Cal.4th 82, 88-89, 124 Cal.Rptr.2d 530, 530 P.2d 703 (2002)....10

*Nygard Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027 (2008) ...................................11

*Polygram Records, Inc. v. Superior Court*,  170 Cal.App.3d 543, 549-550 (1985)..........13

*Rogers v. Home Shopping Network Inc.* , 57 F.Supp.2d 973 (1999)............................8, 10

*Rusheen v. Cohen*, 37 Cal.4th 1048, 1056 (2006) .................................................8

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)................17

*Summit Bank v. Rogers*,206 Cal.App.4th 669, 695-96 (2012)...................................10

*Summit Tech. v. High-Line Medical Instruments Co.*, 922 F.Supp. 299, 304 (C.D.Cal. 1996) ....................................................................................................6

ii

*Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206 (9th Cir. 2005)......................................7

*Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) ................................7

*Wilbanks v. Wolk*, 121 Cal.App.4th 883, 897 (2004) .....................................................8, 9

*Wong v. Jing*, 189 Cal.App.4th 1354, 1366 (2010) ......................................................9, 10

*Zhang Jingrong v. Chinese Anti-Clt World Alliance*, 311 F.Supp.3d 514, 539 (E.D. N.Y.

2018) .......................................................................................................................................1

**Statutes**

Cal. Civ. Code § 1598 ...............................................................................................................15

Cal. Code Civ. P. § 425.16.................................................................................................2, 7, 8

Cal. Code Civ. P. § 425.16(e) .....................................................................................................7

Cal. Code Civ. P. § 425.16(e)(3) ............................................................................................8, 9

Cal. Code Civ. P. § 425.16(e)(4) ................................................................................................8

**Rules**

Fed. Rules Civ. Proc. 12(b)(6) ....................................................................................6, 8, 10, 17

Fed. Rules Evid. 408 ..................................................................................................................15

TABLE OF AUTHORITIES

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   **INTRODUCTION**

"Under the First Amendment, there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). As James Madison, the principal author of the First Amendment, wrote: "[T]he opinions of men, depending only on the evidence contemplated by their own minds cannot follow the dictates of other men." *Zhang Jingrong v. Chinese Anti-Clt World Alliance*, 311 F.Supp.3d 514, 539 (E.D. N.Y. 2018). For that reason, "statements of opinion can never subject the speaker to liability for making a false and defamatory statement." *John Doe 2 v. Superior Court*, 1 Cal.App.5th 1300, 1313 (2016). Nevertheless, Plaintiff seeks to subject Defendants to liability for expressions of opinion drawn from true facts.

Defendants spent a considerable amount of money to purchase a luxury travel trailer that Plaintiff advertised generally and marketed specifically to Defendants as being safe and having very low volatile organic compounds (VOCs). As Defendant Kelley told Plaintiff, this was especially important to her because prior health issues had left her sensitive to chemical exposure.

After spending several hours during the day and sleeping a single night inside the trailer, Defendant Kelley became ill and went to the emergency room for treatment. As Defendant Kelley's symptoms directly coincided with her time spent in the trailer, Defendants came to the natural opinion that the trailer may have a causal relationship to her symptoms. Accordingly, Defendants hired an independent environmental engineer to test the air quality in the trailer and learned that it contained severe levels of total VOCs, elevated levels of formaldehyde, and moderate levels of microbial VOCs. The third-party air-quality experts specifically notated in a written report an observable "strong chemical odor detected upon entry of the trailer" purchased by Defendants and concluded that the air quality in the trailer had been "adversely impacted by chemicals … [and] formaldehyde," among other things, resulting in recommendations that Defendants stay out of the trailer and continue to pursue medical treatment for their symptoms, including

for "chemical exposure." Defendant Kelley repeated the factual assertions and opinions of the air-quality experts and offered her own opinion that her symptoms appeared to be related to Plaintiff's product.

For the reasons set forth below, Plaintiff's three claims for relief—defamation, trade libel, and breach of confidentiality—each fail to state a claim upon which relief may be granted. Moreover, each of these claims seeks to suppress Defendants' constitutionally-protected freedom to express their opinion. While the First Amended Complaint is vague as to which specific statements by Defendants it claims are allegedly defamatory, the primary thrust of Plaintiff's claims is that it is untrue that the trailer may have made Defendant Kelley ill. But the causal relationship between the trailer and Defendant Kelley's illness is purely protected opinion (indeed, any court would require expert opinion to establish that causation or lack thereof), and Plaintiff's attempt to silence Defendants' speech is precisely the kind of action that California's Anti-SLAPP statute, Cal. Code Civ. P. § 425.16, is designed to prevent. Moreover, as set forth below, Plaintiff's First Amended Complaint facially lacks sufficient facts to support the claims alleged.

Accordingly, and in sum, because (i) Plaintiff does not specifically identify the allegedly-defamatory statements by Defendants forming the basis of any singular claim for relief; (ii) all statements Plaintiff does identify in the body of the First Amended Complaint are either verifiably true or are constitutionally-protected opinion; (iii) Plaintiff is a limited-purpose public figure and cannot establish malice; and (iv) Plaintiff has not alleged any actual and quantifiable damages sufficient to sustain any of Plaintiff's claims, Plaintiff's claims are factually insufficient, Plaintiff cannot meet its burden of showing a likelihood of success at trial, and Defendants respectfully submit that this action should be dismissed and Plaintiff's First Amended Complaint ("FAC") should be stricken with costs and fees awarded to Defendants under C.C.P. § 425.16.

## II.    FACTUAL BACKGROUND

### A. The Parties' Transaction

MEMORANDUM OF POINTS AND AUTHORITIES

In September 2021, Defendant Kelley inquired with Plaintiff about a Living Vehicle trailer. (First Am. Compl., ECF # 12, ¶ 21.) On February 14, 2022, the Parties entered into a Purchase and Sale Agreement for a 2022 Living Vehicle PRO-EV trailer. (ECF # 12, ¶ 37.) The trailer was delivered to Defendant Robinson in Arizona in late June 2022. (ECF # 12, ¶ 44-46.)

Early in the process, Defendant Kelley asked Plaintiff about its claims about being low-VOC because she was recovering from mold toxicity. (ECF # 12, ¶ 22.) Plaintiff represented to Defendant Kelley that, while it could not guarantee its product was VOC free, it was "[d]efinitely Low VOC." *Id*.

In July 2022, Defendant Robinson transported the trailer from Arizona to New Hampshire and Defendant Kelley soon began to experience symptoms of illness that corresponded with her spending time in the trailer. (ECF # 12, ¶ 47, 50.) On July 18, 2022, Defendants had an air quality test performed in the trailer by IndoorDoctor, an environmental engineering firm. A complete copy of IndoorDoctor's report is attached to the FAC as Exhibit B-1. (ECF # 12-2.) The IndoorDoctor report includes the following summary of the results of its testing:

**Summary of Results:**

| Chemical Levels | Severe |
|---|---|
| Microbial Volatile Organic Compounds | Moderate |
| Formaldehyde | Elevated |
| Airborne Particulate Matter (PM) | Normal |
| Carbon Dioxide | Normal |
| Carbon Monoxide | Above Normal |
| Relative Humidity | Elevated |
| Toxic Gasses | Normal |
| Oxygen | Normal |
| Ozone | Normal |
| Temperature | Normal |

**Chemical Profile: Living Areas**

| | IAQ Level |
|---|---|
| TVOCs | Severe |
| MVOCs | Moderate |

**Significant VOCs Above 100ppb**

| Compound | Level (ppb) |
|---|---|
| Pentane (C 5) | 430 ppb |
| 2-Methylbutane | 250 ppb |

(ECF # 12-2, Page ID # 154.)

The IndoorDoctor report stated, particularly with respect to its formaldehyde measurements:

MEMORANDUM OF POINTS AND AUTHORITIES

**Discussion:** Formaldehyde and chemical off-gassing can result from a mixture of various household products and building materials. An increase in temperature and humidity may increase overall formaldehyde and chemical levels. Many people experience adverse health symptoms like headaches, eye, nose and throat irritation, persistent coughing and nosebleeds when exposed to formaldehyde gas.

(ECF # 12-2, Page ID # 156.)

IndoorDoctor noted that Defendants were "experiencing adverse health effects while staying in the trailer" and observed a "[s]trong chemical odor detected upon entry of the trailer" and "heavy accumulation of organic matter within air ducts"; it concluded that the air quality was "adversely impacted by chemicals, humidity, formaldehyde, as well as limited fresh air exchanges evident by above normal levels of carbon dioxide"; and it recommended that Defendants "[c]ontinue to seek medical attention due to chemical exposure" and "[a]void further exposure inside trailer until proper ventilation is established." (ECF # 12-2, Page ID # 164-65.)

The results from the test conducted by IndoorDoctor were interpreted by Enthalpy Analytical, which opined that total VOCs in the trailer of 4500 ng/L were at a "severe" level. In comparison, Enthalpy considers 500-1500 ng/L to be a "moderate" level, and noted that the average home has total VOCs of 1900 ng/L. (ECF # 12-3, Page ID # 172.) Enthalpy found mold VOCs totaling 15 ng/L, a "moderate level," compared to an average of 10 ng/L, which indicates some active mold growth. (ECF # 12-3, Page ID # 173.) Enthalpy further found that 65% of the air contamination was from "building related sources" and 19% was from "mixed building and lifestyle sources." (ECF 12-3, Page ID # 174.) Enthalpy singled out formaldehyde as a contaminant and found an "elevated" level of 76 ng/L. (ECF 12-4, Page ID # 183.) For reference, LEED recommends exposure no greater than 32 ng/L for four hours; California recommends no more than 33 ng/L for 8 hours. (ECF 12-4, Page ID # 184.)

## B. It Is Unclear from the FAC What False Statements Plaintiff Alleges

After becoming ill, and especially after receiving the results of the air quality tests, Defendant Kelley began to describe her experiences on social media. Plaintiff generally

alleges that these posts are defamatory, but the FAC is extremely vague as to which specific statements by Defendants it even alleges were false. Instead, it is full of irrelevant asides and mischaracterizations, and relies on implication to suggest what it believes is false. For example, in Paragraph 52 of the FAC, Plaintiff alleges:

> Despite allegedly being "near death," vomiting for days, having crushing non-stop headaches, and suffering from organ failure, Graham had the time and ability to make social media videos but did not at any point reach out to LV to inform any of the people she had personally communicated with through text message, email, and phone about the situation.

(ECF 12, ¶ 52.)

Likewise, in Paragraph 62, Plaintiff states:

> Notably, despite being "deathly ill," being "bed ridden," and allegedly suffering from organ failure and "formaldehyde poisoning," Graham had the strength, mental clarity, and energy to produce and compile lengthy social media videos and posts regularly, often multiple times a day.

(ECF 12, ¶ 62.)

Scare quotes, sarcasm, and exaggeration, separated from context, are not allegations of falsity. Neither are colloquial descriptions of the air quality test results, such as "very very high VOC levels" (instead of "severe") or "very very high formaldehyde" (instead of "elevated"). (ECF 12, ¶ 56.) Neither is a statement reconsidering her purchase, like "I probably wouldn't buy one of their trailers." (ECF 12, ¶ 58.) Neither are Defendant Kelley's descriptions of her own symptoms.

Paragraph 64, the nearest thing in the FAC to a specific allegation of falsehood, does not concern the Plaintiff or any public statement by Defendants. Instead, it declares that "[i]t turns out Robison(sic)/Graham never stayed in an AirBNB but were living in Graham's mother's house in New Hampshire."

Other important parts of the FAC simply mischaracterize the evidence. For example, in Paragraph 66, Plaintiff alleges that the air quality tests were not done until July 18, 2022, "yet Graham had started posting on her social media proclaiming she was

suffering from formaldehyde poisoning and exposed to extremely high levels of VOCs on July 17, 2022." (ECF 12, ¶ 66.) However, the social media post from July 17, 2022 that Plaintiff includes makes neither proclamation. Instead, Defendant Kelley stated "[w]e are having it tested tomorrow, *as our symptoms align with* formaldehyde poisoning. It was advertised as low VOC and healthy." (ECF 12, ¶ 50) (emphasis added.) Plaintiff misrepresents what Defendant Kelley actually said to turn a statement of opinion ("our symptoms align with formaldehyde poisoning") into a representation of fact ("she was suffering from formaldehyde poisoning"), and a verifiably true statement ("it was advertised as low VOC") into a theoretically arguable one ("she was . . . exposed to extremely high levels of VOCs").

Likewise, in Paragraph 68, Plaintiff "most importantly" cherry picks the contents of the air quality tests to support a false implication. It claims that "the Testing Reports do not identify any harmful levels of any individual VOCs or chemicals." This is not entirely accurate, as the reports do identify formaldehyde levels above what is deemed safe for prolonged exposure. Moreover, while they do not identify harmful levels of "individual VOCs," they do identify "severe" levels of total VOCs, which Enthalpy notes can cause physical symptoms such as headaches, nausea, and severe illness. (ECF 12-3, Page ID # 172.) And while it is technically true that the air quality reports "do not conclude that any identified substances have caused Graham or Robinson any physical injury or illness," IndoorDoctor observed that Defendants experienced "adverse health effects," concluded that the trailer's "air quality has been adversely impacted by chemicals," and recommends that Defendants seeks medical attention and avoid further exposure inside the trailer. (ECF 12-2, Page ID # 164-65.)

## III.   ARGUMENT

### A.   Fed. Rules Civ. Proc., Rule 12(b)(6) Standard of Review

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. *Summit Tech. v. High-Line Medical Instruments Co.*, 922 F.Supp. 299, 304 (C.D. Cal. 1996). Dismissal

6

pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper "where there is either a 'lack of cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* While a Court must accept all allegations in the complaint and reasonable inferences, it "need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory allegations cast in the form of factual allegations." *Id.* (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)); *see also Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007) ("'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

## B. Anti-SLAPP Standard of Review

California's anti-SLAPP law was "enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). Although the anti-SLAPP statute was enacted by the state legislature, "California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court." *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206 (9th Cir. 2005). Anti-SLAPP motions are decided using a two-step analysis. First, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity [within the meaning of CCP § 425.16]." *Kronemyer v. Internet Movie Data Base, Inc.*, 150 Cal.App.4th 941, 946, 59 Cal.Rptr.3d 48, 52 (2007). To that end, C.C.P. § 425.16(e) provides, in pertinent part, that an "act in furtherance of a person's right of petition or free speech . . . includes . . . (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or issue of public interest."

If the defendant makes its threshold showing, the court then "determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Equilon*

*Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002). In order to establish a probability of prevailing on the claim, "a plaintiff responding to an anti-SLAPP motion must 'state and substantiate a legally sufficient claim.'" *Rusheen v. Cohen*, 37 Cal.4th 1048, 1056 (2006). In the context of a Rule 12(b)(6) Motion, this does not contemplate the offering of evidence but rather an assessment of whether Plaintiff has adequately stated facts in its pleading sufficient to satisfy the requisite elements of its claim. *See Rogers v. Home Shopping Network Inc.*, 57 F.Supp.2d 973 (1999).

Here, while the FAC includes claims for relief for Defamation, Trade Libel, and Breach of Confidentiality, the Defamation and Trade Libel claims are duplicative and substantively lack merit, as described below, including due to Plaintiff's failure to sufficiently allege fundamental elements of each, the Breach of Confidentiality claim is not cognizable and wholly without merit, and all three counts fail to state a claim upon which relief can be granted. Even taking the allegations on the face of the FAC as true, this matter represents a quintessential effort to stifle protected speech under the First Amendment and should be dismissed pursuant to C.C.P. § 425.16.

## C. Plaintiff's Claims Fail As A Matter of Law Under Rule 12(b)(6) and Are Barred by California's Anti-SLAPP Law

As the grounds warranting a dismissal of Plaintiff's claims under Rule 12(b)(6) and California Anti-SLAPP are, in many instances, the same, Defendants address these issues together as set forth below.

### 1. Each of Plaintiff's Claims Arises from Protected Speech

Each of Plaintiff's three counts is based on Defendants' online product reviews and speech on social media about their experiences with Plaintiff's product. This is precisely the sort of activity that C.C.P. § 425.16 is designed to protect against. Subsection (e)(3) protects speech in a "public forum in connection with an issue of public interest." Further, if the conduct at issue is in furtherance of the right of free speech and concerns a public issue or an issue of public interest, it is protected under Subsection (e)(4)

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES

1   "regardless of whether that conduct occurs in a place where ideas are freely exchanged."

2   *Wilbanks v. Wolk*, 121 Cal.App.4th 883, 897 (2004).

3          YouTube, Instagram, and other public websites are unquestionably within the

4   definition of "place open to the public or public forum" as required by CCP §

5   425.16(e)(3). "Web sites accessible to the public are 'public forums' for purposes of the

6   anti-SLAPP statute." *Wong v. Jing*, 189 Cal.App.4th 1354, 1366 (2010); *Lacoste v.*

7   *Keem*, No. 2:20-cv-02323, 2020 U.S.Dist. LEXIS 153779, *5 (C.D. Cal. June 23, 2020)

8   ("YouTube, Twitter, Instagram, and Snapchat are websites accessible to the public, and

9   are therefore public forums under the anti-SLAPP statute."). Defendants' postings

10  likewise involve speech about issues of public interest. Statements or activities that

11  involve conduct that "could affect large numbers of people beyond the direct participants

12  are public issues." *Wilbanks*, 121 Cal.App.4th at 897. "[C]onsumer information that goes

13  beyond a particular interaction between the parties and implicates matters of public

14  concern that can affect many people is generally deemed to involve an issue of public

15  interest for purposes of the anti-SLAPP statute." *Wong*, 189 Cal.App.4th at 1366. By

16  contrast, private statements to a narrow audience about private issues are not subject to

17  anti-SLAPP protection. *Bikkina v. Mahadevan*, 241 Cal.App.4th 70, 82-83, 193 Cal. Rptr.

18  499 (2015).

19         Here, Defendants made public statements on public websites to Defendant Kelley's

20  sizeable following—which Plaintiff admits includes other prospective customers of

21  Plaintiff—regarding health and safety problems arising from Plaintiff's product, which

22  Plaintiff markets as being safer and more health-conscious than other travel trailers. The

23  health and safety of consumer products is unquestionably a matter of public concern. As

24  Defendants sought to inform a public audience, in public forums, about health hazards

25  she encountered due to her purchase of the trailer, Defendants have satisfied the first

26  prong of the anti-SLAPP test.

27  / / /

28  / / /

9

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

### 2.  Plaintiff Cannot Demonstrate Probability of Prevailing

The burden then shifts to Plaintiff to establish a probability that it will prevail on the merits of each of its claims. *Mendoza v. Wichmann*, 194 Cal.App.4th 1430, 1447 (2011). "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id*. (quoting *Navellier v. Sletten*, 29 Cal.4th 82, 88-89, 124 Cal.Rptr.2d 530, 530 P.2d 703 (2002)).[1] Plaintiff cannot meet its burden.

### 3.  Plaintiff's Defamation Claim Fails as a Matter of Law

#### a.  The Allegedly Defamatory Statements Are Opinions

Under California law, the elements of a claim for defamation are: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damages." *Wong*, 189 Cal.App.4th at 1369. It is a question of law for the court whether a statement "is reasonably susceptible of an interpretation which implies a provably false assertion of actual fact. If that question is answered in the affirmative, the jury may be called upon to determine whether such an interpretation was in fact conveyed." *John Doe 2 v. Superior Court*, 1 Cal.App.5th 1300, 1312 (2016).

"The sine qua non of recovery for defamation … is the existence of falsehood. Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected." *Summit Bank v. Rogers*, 206 Cal.App.4th 669, 695-96 (2012). The question is "whether a reasonable fact finder could conclude the published statement

---

[1] However, again, in the context of a 12(b)(6) Motion, this does not include the submission of extrinsic evidence but instead an assessment of whether Plaintiff has adequately stated facts in its pleading sufficient to satisfy the requisite elements of its claim. *See Rogers v. Home Shopping Network Inc.*, 57 F.Supp.2d 973 (1999).

MEMORANDUM OF POINTS AND AUTHORITIES

declares or implies a provably false assertion of fact." *McGarry v. University of San Diego*, 154 Cal.App.4th 97, 112 (2007).

Here, to the extent that the FAC identifies allegedly defamatory statements, most of those statements revolve around Defendants' opinion that the elevated chemical levels in the trailer may have caused or contributed to their illness. Defendants came to that opinion as the result of the timing of the onset of symptoms and the easing of symptoms with time away from the trailer, along with the results of the professional air quality testing Defendants obtained. As Defendant Kelley explained in one of the posts included in the FAC, "I (sic) took me a few days to figure out that I should get the air quality tested after I realized that I was feeling better when I was not inside the actual travel trailer." (ECF 12, ¶ 81.) IndoorDoctor, after receiving its test results, recommended that Defendants continue to receive medical treatment for chemical exposure and to avoid being exposed to the inside of the trailer.

Other statements quoted by Plaintiff, seemingly referenced to support Plaintiff's claims but which are not specifically alleged to be false, are also clearly opinion. For example, Plaintiff quotes things like "[the trailer is] not what we paid for" (ECF 12, ¶ 55), "I think I may have permanent organ damage from the poisoning" (*Id.*), "I probably wouldn't buy one of their trailers" (*Id.* at ¶ 58), and "I don't think that most people that could afford this trailer would ever buy this trailer after they see the air quality results" (*Id.* at ¶ 74).

**b.  The Allegedly Defamatory Statements Are True**

Many of the statements Plaintiff complains about, especially with regard to the air quality testing and the terms of Plaintiff's proposed one-sided settlement, are self-evidently true from the terms of the FAC and the documents attached to it. The air quality reports, Exhibits B-1, B-2, and B-3 to the FAC clearly indicate that levels of total VOCs, formaldehyde, and various other compounds in the trailer were measured at high levels, and that the measured mold VOC levels suggested active mold growth. Defendants simply publicized those results. Plaintiff takes issue with some words of qualification or

11

quantification used by Defendants (e.g., "very very high VOCs" instead of "severe VOCs"), but those words are accurate and, at most, constitutionally protected hyperbole, which cannot be defamatory. *Nygard Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027 (2008) ("Rhetorical hyperbole, vigorous epithets, lusty and imaginative expressions of contempt, and language used in a loose, figurative sense" are entitled to constitutional protection) (quotations omitted).

Plaintiff also claims that Defendants falsely stated that it "refus[ed] to take back the Trailer and to provide a refund." (ECF 12, ¶ 92.) However, each of the statements from Defendants that Plaintiff quotes makes clear that Plaintiff refused to accept the return and refund of the trailer without Defendants agreeing to silence about it. For example, Defendant Robinson—in his only public statement identified by Plaintiff, a product review—states:

> So far, the company has not wanted to give us a full refund and take back the trailer.
>
> For approximately 630,000 we expected the world class service the company spoke of… but instead we have a trailer that we can't live in… and the living vehicle company wants us to stop talking about it.

(ECF 12, ¶ 91.)

Defendant Kelley is quoted as saying, "They just sent us a document . . . that they'd would like us to sign to take it back because they don't want anyone to know about it." (ECF 12, ¶ 76.) Plaintiff admits that its offer to buy back the trailer was contingent upon, among other things, "removal of any and all social media posts, blogs, and comments that were made by or in control of Robinson/Graham; confidentiality; and non-disparagement." (ECF 12, ¶ 71.)  In fact, the proposed draft settlement agreement expressly referenced in Plaintiff's First Amended Complaint and purportedly forming the basis of its third claim for relief expressly provides as much.  (*See* Robinson Decl., Ex 2, ¶¶ 9-13 & Ex B thereto [Pg. 20].)

/ / /

/ / /

### c.  Plaintiff Must, and Cannot, Show Actual Malice

Living Vehicle is a commercial enterprise that promotes itself using matters of public controversy, including health and the environment, is thereby a limited purpose public figure and, as a result, must not only prove falsehood but also establish actual malice to prevail on its claims. *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) (a limited-purpose public figure is one who "thrust[s] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved"). Plaintiff unquestionably promotes itself as an environmentally-friendly and health-conscious alternative and appeals to consumers who believe in the virtues of renewable energy and healthy design. Plaintiff also engages in activities designed to promote itself publicly, including through a newsletter listserv, and with a public blog and website. *See e.g.,* ECF 12, ¶ 36; ECF 12-5, Pg. 7.  These publicity efforts, among others, make Plaintiff a public figure.

Moreover, even if it were not a public figure, Plaintiff's claims would still be subject to an actual malice standard, as Defendants' allegedly-defamatory statements were directed at the quality and safety of Plaintiff's product. *Melaleuca, Inc. v. Clark*, 66 Cal.App.4th 1344, 1358 (1998) (plaintiff must demonstrate actual malice in the context of alleged false statements about the contents of a product).

It should not come as a surprise to Plaintiff when a buyer who purchased its trailer for health and sustainability reasons scrutinizes its product's safety. Plaintiff invites and pursues public attention for sustainable and healthy trailer design and in doing so has purposefully inserted itself into a public controversy. As such, Plaintiff is required to show, by clear and convincing evidence, actual malice, that Defendant made statements with "knowledge of their falsity or reckless disregard of their truth." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 270 (2013). As is evident from the face of the FAC, Defendants' assertions about the air quality and health effects are based entirely on their own physical experiences and the opinions of the experts they hired. If the results of the air quality tests were not properly assessed, that error rests with the experts who

CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

performed the tests and not with Defendants, who truthfully and reasonably relied on scientific reports they obtained specifically to accurately depict the trailer's air quality.

### d. Plaintiff Conflates Defamation with Trade Libel

As explained by the California Court of Appeal, Defamation and Trade Libel claims, while often conflated, are wholly distinct. Polygram Records, Inc. v. Superior Court, 170 Cal.App.3d 543, 549-550 (1985). Indeed, a claim for defamation involves a "false and unprivileged publication" which is "concerned with statements that cast aspersions upon the plaintiff directly or by imputation fairly implied, not statements that, though disparaging of the quality of his business or goods, do not call into question the plaintiff's honesty, integrity or competence or reasonably imply any reprehensible personal characteristic." Id.

In this case, while Plaintiff casts its allegations as implicating a claim for "defamation" in the colloquial sense, reading the allegations in context, the only claim averred in the First Amended Complaint pertains to the nature of Plaintiff's goods, and therefore are more aptly cast as claims for trade libel and are not truly claims for defamation.

### 4. Plaintiff's Trade Libel Claim Fails as a Matter of Law

Plaintiff's claim for trade libel is largely duplicative of its claim for defamation and cannot succeed for all of the above-stated reasons. A Plaintiff asserting a claim of trade libel must prove actual malice, which Plaintiff here cannot. Melaleuca, 66 Cal.App.4th at 1358-65. Trade libel claims, however, also differ materially from defamation "in the greater burden of proof resting on the plaintiff, and the necessity for special damages in all cases. . . . [The] plaintiff must prove in all cases that the publication has played a substantial part in inducing others not to deal with him and as a result he has suffered special damages." Erlich v. Etner, 224 Cal.App.2d 69, 73-94 (1969).

In other words, Plaintiff here has the burden to identify lost profits or customers. However, it has not identified a single customer lost or dollar unearned as a result of the acts alleged in its FAC. In fact, Plaintiff merely alleges that a single customer (whom,

14

according to the First Amended Complaint, Defendant Kelley introduced to Plaintiff's product) "expressed concerns about moving forward," and Plaintiff is still in discussions with that customer. (ECF 12, ¶¶ 108-110.)  These allegations are far from sufficient to make out a claim for trade libel.

### 5.  Plaintiff's Breach of Confidentiality Claim Is Incognizable

Count 3 of the FAC is confusing and vague. The purported basis of the claim appears to be that Defendant Robinson signed an NDA as a condition to inspecting the trailer before accepting delivery, and then somehow violated that agreement when Defendant Kelley purportedly disclosed the "terms" of the "draft settlement agreement" that Plaintiff sent to Defendants. This claim fails for several reasons.

First, as mentioned, only Defendant Robinson signed the NDA, and only Defendant Kelley purportedly discussed the terms of the "draft settlement agreement." Accordingly, there is no basis for any claim against Defendant Robinson as to any supposed breach, and no agreement exists with Defendant Kelley with respect to any purported NDA – and therefore there are no grounds to enforce the agreement against her.[2]

Further, a mere "draft settlement agreement" sent by Plaintiff to Defendant Robinson, and rejected by Defendants, is not protected from disclosure outside of court proceedings. *See, e.g.,* Fed. R. Evid. 408 (prohibiting disclosure of settlement negotiations only as evidence of liability in court). However, setting that aside, and even if that were not the case, Plaintiff has already publicly filed the "draft settlement agreement" in this case (ECF 45-2)—despite having separately requested to file other confidential information under seal—undermining any possible claim that such information is confidential, that Plaintiff reasonably perceives some sort of supposed

_____

[2] Additionally, the copy referenced in both Defendant Robinson's declaration as well as in a separate filing by Plaintiff in this action (ECF 43-1) is not even counter-signed by Plaintiff raising doubts whether Plaintiff can even claim to have a valid, mutually executed and enforceable agreement with anyone. *See* Robinson Decl., Ex. 1.

MEMORANDUM OF POINTS AND AUTHORITIES

confidentiality in the document, or that Plaintiff can purport to have sustained some injury from the disclosure of the contents of the draft agreement to the public, particularly where Plaintiff, itself, has disclosed the full express terms of said agreement to the public through its own filings in this action.

Were this not enough, the NDA itself is so uncertain and indefinite it cannot possibly be enforced. *See* Civ. Code, § 1598 ("To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.") While Plaintiff references and relies upon the referenced NDA and draft settlement agreement in support of its third claim for relief, it conspicuously failed to attached the agreements to the FAC.

As Plaintiff failed to include the NDA and the Confidential Settlement Agreement in the First Amended Complaint, they are attached to the accompanying declaration of Jeff Robinson as Exhibits 1 and 2, respectively, and offered under the incorporation by reference doctrine, which provides that the court can look beyond the pleadings to documents referenced therein and upon which the claims are based without converting this motion into a Rule 56 motion. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). A cursory review of these documents show they cannot support Plaintiff's claim here.

From its face, it is clear that the NDA is merely intended to bar disclosure of "proprietary information" that might constitute a trade secret, including "plans, forecasts, research, process, ideas, proposals, schematics, financial information, marketing strategies, production." A one-sided draft settlement agreement is facially not within the contemplation of this NDA. However, even if Plaintiff submits that it is, a mere vague reference to "proposals" in the context of the NDA is insufficiently definite to place Robinson on notice that the purported unsigned settlement agreement was entitled to any protection.

/ / /

---

16

Further, there is no indication that the NDA is even effective. Paragraph 7 of the NDA makes clear that it is not binding unless and until the parties enter into a separate, qualifying "definitive written agreement," which is undefined in the agreement other than to state that the NDA is not, itself, a definitive written agreement. *See* Robinson Decl., Ex. 1, ¶ 7. Plaintiff has made no allegation or showing that such subsequent definitive agreement was entered or how that bears on what the NDA was designed to designate as confidential.

Finally, an essential element of any breach of contract claim is damages. *See In re Facebook Privacy Litig.*, 791 F.Supp.2d 705, 717 (N.D. Cal. 2011) ("California law requires a showing of 'appreciable and actual damage' to assert a breach of contract claim. [internal citation omitted] Nominal damages and speculative harm do not suffice to show legally cognizable damage under California contract law"). However, for the same reasons set forth above, Plaintiff cannot possibly establish that it has been damaged by any supposed disclosure by the Defendants relating to the "draft settlement agreement." In fact, Plaintiff fails to cite with any specificity what particular aspects of the agreement were disclosed and how such disclosures effected a material breach resulting in damages.

## IV.   CONCLUSION: THE COURT SHOULD DISMISS THIS ACTION AND NOT GRANT LEAVE TO AMEND

For the reasons set forth above, Plaintiff's claims are barred as a matter of law by California's Anti-SLAPP statute. Accordingly, Defendants respectfully submit that Plaintiff's claims should be dismissed and Defendants are entitled to recover their reasonable attorneys' fees and costs.

Notwithstanding the foregoing, should the Court dismiss this action on other Rule 12(b)(6) grounds, including for Plaintiff's failure to state a claim for relief, Defendants respectfully submit that such dismissal should also be made without leave to amend. Where a pleading cannot possibly be cured by amendment or any amendment would be futile, it is appropriate to deny leave to amend. *See Rutman Wine Co. v. E. & J. Gallo*

MEMORANDUM OF POINTS AND AUTHORITIES

1  *Winery*, 829 F.2d 729, 738 (9ᵗʰ Cir. 1987). For the reasons outlined above, Defendants

2  submit that Plaintiff cannot possibly amend to cure the deficiencies in its First Amended

3  Complaint. Defendants thank the Honorable Court for its consideration.

5  Dated:  November 15, 2022          Respectfully submitted,

6                                     **CSREEDER, PC**

7  By_____

8                                     Elan Bloch
                                       Zachary D. Ward
9

10                                     *Attorneys for Defendants,*
                                       *Megan Kelley and Jeff Robinson*
11

12  Dated:  November 15, 2022          **MINC LLC**

13

14  By___/s/ Daniel A. Powell_____

15                                     Daniel A. Powell
                                       Nathan P. Woodward
16

17                                     *Attorneys for Defendants,*
                                       *Megan Kelley and Jeff Robinson*

18
CSREEDER, PC
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES