UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

| Proceedings: | (IN CHAMBERS) Order re Plaintiff's Motion for Preliminary Injunction [DE 40] and Defendants' Motion to Strike or Dismiss the FAC [DE 48] |
|---|---|

## I.   INTRODUCTION

On September 7, 2022, Living Vehicle, Inc. ("Plaintiff") filed a First Amended Complaint ("FAC") against Megan Kelley ("Kelley") and Jeff Robinson ("Robinson," and together, "Defendants"). (ECF No. 12.) The FAC alleges claims for defamation, trade libel, and breach of confidentiality, premised upon Defendants' social media statements concerning Plaintiff, its business practices, and its product—a luxury travel trailer.

Presently before the Court are two Motions: (1) Defendants' Motion to Strike the FAC under California's Anti-SLAPP[1] statute or, in the alternative, to dismiss (ECF No. 48); and (2) Plaintiff's Motion for Preliminary Injunction. (ECF No. 40.) For the following reasons, the Court **GRANTS in part** Defendants' Motion and **DENIES** Plaintiff's Motion.

## II.   FACTUAL BACKGROUND

The following facts are alleged in the FAC, unless otherwise noted:

Plaintiff is a designer and distributor of luxury travel trailers. Defendant Kelley is a social media influencer who posts under the pseudonym "Megan Graham" on YouTube, Facebook, Twitter, and TikTok. She describes herself as a health influencer and an advocate for various health-related issues. Defendant Robinson is Kelley's husband, and he also serves as her videographer.

---

[1] "Strategic Lawsuit Against Public Participation."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

In late 2021, Kelley contacted Plaintiff about purchasing a trailer. In her communications, Kelley noted that she was recovering from mold exposure and asked whether Plaintiff's trailers contained volatile organic compounds, or "VOCs." Plaintiff responded that it could not guarantee that its product was completely VOC free, but that it was "Definitely Low VOC." (FAC ¶ 22.) A month later, Defendants travelled to Plaintiff's headquarters and toured several model trailers. While they were there, Defendants filmed a video blog (or "vlog") describing the various features and amenities of Plaintiff's product. At that time, neither defendant reported feeling ill after hours of exposure to Plaintiff's trailers.

Defendants eventually decided to purchase one of Plaintiff's trailers (the "Trailer") in February 2022. As the parties began discussing the Trailer's construction, Robinson signed a non-disclosure agreement ("NDA"), agreeing to keep confidential all information "including, but not limited to, plans, forecasts, research, process, ideas, proposals, schematics, financial information, marketing strategies, production as well as any and all other information or documentation, including all versions, modifications or revisions should there be any updates, together with notes, reports, analyses, compilations, studies, or other documents . . . to the extent they contain or otherwise reflect such information." (*See* Defs.' Mot. Dismiss, Robinson Decl. Ex. 1 at 1, ECF No. 48-3.)[2]

Defendants picked up the Trailer in June 2022. On July 17, Kelley posted a video on Instagram stating that she had become "incredibly sick" and was "barely [able to] walk" after sleeping in her "mega expensive trailer," and she suspected that she was suffering from formaldehyde poisoning. (FAC ¶¶ 50, 54.) Kelley then made numerous posts over the succeeding weeks, all of which accused the Trailer of being "extremely high VOCs," "full of formaldehyde," and "far from clean [or] safe," and of potentially causing "permanent organ damage." (FAC ¶ 53.) To prove her claims, Kelley got the Trailer tested by a service called IndoorDoctor (the "IndoorDoctor Test"). The IndoorDoctor Test purportedly showed that the Trailer was "off the charts" for VOCs and formaldehyde. (FAC ¶ 59.) Kelley then began posting Instagram stories that accused Plaintiff of lying about the safety of its trailers and knowingly selling toxic products.

After Plaintiff became aware of Kelley's posts, it reached out to Robinson, who responded that the Trailer was making both Defendants very ill and that he had to wear a respirator while inside of it. Plaintiff's CEO responded by promising to investigate and remedy the issue, and if necessary, buy back

---

[2] Plaintiff did not attach the NDA to the FAC. However, the FAC discusses the NDA at length. While the scope of a court's review of a 12(b)(6) motion is typically limited to the contents of the pleading, a court may consider exhibits incorporated by reference into a pleading. *Hal Roach Studios, Inc. v. Richard Feiner Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Because Plaintiff explicitly references the NDA in the FAC and the authenticity of the document is not in question, the Court relies on the document itself, as submitted by Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

the Trailer. He asked for access to the Trailer so that Plaintiff could conduct its own test for VOCs. Rather than allow Plaintiff to investigate, Robinson sent the IndoorDoctor Test results. Plaintiff's CEO reiterated his willingness to buy back the Trailer and sent a draft settlement agreement. That agreement was marked as "CONFIDENTIAL," and included a provision that Defendants remove all accusatory social media posts. Defendants did not make a counteroffer. Instead, they took to social media and accused Plaintiff of being completely unwilling to provide Defendants a refund or to test the Trailer for VOCs.

Because Defendants would not grant Plaintiff access to the Trailer, Plaintiff had an investigator test several other Living Vehicle trailers for VOCs. Those tests resulted in findings of "very low" VOCs, indicating to Plaintiff that the IndoorDoctor Test was misleading or incorrect. (FAC ¶¶ 97–103.) Plaintiff provided Defendants with these results, but Defendants have not acknowledged them.

Kelley's posts have received comments indicating that her followers believe Plaintiff to be "fishy", unethical, and fraudulent. (FAC ¶ 86.) Her followers also submitted negative reviews or refund requests on her behalf. (*See, e.g.*, FAC ¶ 89 (message sent to Plaintiff, asking "[w]hy would you not refund money back for a living trailer with high Tvocs. Unacceptable a buyer has extreme health issues with a clear inspection of the trailer. We will help put the word out. Accept responsibility for your product. I will help her put the word out.").) In addition, a customer who had signed a purchase contract for a new trailer expressed that they were hesitant about moving forward due to the "bad reviews" they had seen. (FAC ¶ 108.)

### III. JUDICIAL STANDARD

#### A. Anti-SLAPP Motion to Strike

Under the anti-SLAPP statute, California Code of Civil Procedure § 425.16, a party may file a special motion to strike a claim or counterclaim that is brought primarily to chill the valid exercise of free speech and petition. Such motions may be brought in federal court to strike state law claims. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970–73 (9th Cir. 1999).

Section 425.16 provides a two-step burden-shifting framework. First, the moving party has the burden of showing that the challenged cause of action arises from activity protected under the statute. *Blackburn v. Brady*, 116 Cal. App. 4th 670, 675 (2004). "If the [moving party] does not meet this threshold burden, the court must deny the motion." *Id.* at 676. If the moving party meets the burden, then the burden shifts to the non-moving party, who must demonstrate a probability of prevailing on the merits of the claim. *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66–67 (2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff need not provide "detailed factual allegations" but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court must also "construe the pleadings in the light most favorable to the nonmoving party." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### C. Preliminary Injunction

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (the "*Winter* test"). The Ninth Circuit has indicated that this test may also be applied on a sliding scale: if there are "serious questions going to the merits and a balance of hardships that tips sharply towards the [moving party]" a court may still grant a preliminary injunction, but only if the moving party also demonstrates a likelihood of irreparable injury and that the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In other words, even where a plaintiff is unable to show a *likelihood* of success on the merits, but can at least demonstrate there are *serious questions* going to the merits, and the balance of hardships strongly favors the plaintiff, a court may grant preliminary injunctive relief so long as there is still a showing of the last two elements. *See id.* at 1131, 1134–35.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

In considering a request for preliminary injunction, a court must remain mindful that such relief is aimed primarily at preserving the status quo pending trial. *See L.A. Mem. Coliseum Comm'n v. Nat. Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

### IV. DISCUSSION

Defendants' Motion argues that the Court should strike the FAC because it runs afoul of California's anti-SLAPP statute, or alternatively, that it should dismiss for failure to state a claim. Plaintiff's Motion seeks a preliminary injunction ordering Defendants to remove their allegedly defamatory social media posts and to not post any other defamatory statements during this lawsuit. The Court addresses each motion in turn.

#### A. Motion to Strike or Dismiss

The Court first analyzes whether the FAC should be stricken under the anti-SLAPP statute, before determining whether the FAC states a claim for relief.

##### 1. Anti-SLAPP

Defendants argue that the Court should strike the FAC because their social media posts are protected by the anti-SLAPP statute, and because Plaintiff cannot show a likelihood of succeeding on its claims. Plaintiff counters that Defendants' speech is not, in fact, statutorily protected. The Court agrees with Plaintiff.

A court must analyze an anti-SLAPP motion to strike in two steps. First, it must determine whether the claims arise from protected activity. If they do not, the motion must be denied. If they do, the court then asks whether the plaintiff has shown a probability of success on his claims. *See Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 884 (2019). Defendants argue that their speech is protected under subsections (e)(3) and (e)(4) of the statute, which both require that the speech at issue concerns "an issue of public interest." *See* Cal. Civ. Proc. Code §§ 425.16(e)(3), (e)(4).[3] California courts have described three categories of statements that address issues of public interest: (1) a statement that concerns a "person or entity in the public eye"; (2) statements that "could directly affect a large number of people beyond the direct participants"; and (3) statements that involve "a topic of widespread, public interest." *Rand Res., LLC v. City of Carson*, 6 Cal. 5th 610, 622 (2019).

---

[3] Section 425.16(e)(3) also requires that the statement be made in a public forum. *See id.* (noting that a form of protected speech is a statement "made in a place open to the public or a public forum in connection with an issue of public interest"). Plaintiff does not argue that social media websites are clearly public fora for purposes of the statute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

Notwithstanding that this case is about an individual business transaction, Defendants argue that their statements fall within either the second or third category, because they relate to issues of health, safety, and consumer protection. But California courts have cautioned against this type of "[a]gile think[ing]," which creates a tenuous "link between a statement and an issue of public concern." *Woodhill Ventures, LLC v. Yang*, 68 Cal. App. 5th 624, 632 (2021) (noting that "[a]lmost any statement . . . can be construed to relate to some broader topic," so long as the litigant has a "fondness for abstraction and a knowledge of popular culture"). And those courts consistently hold that statements "relat[ing] to only one transaction," published on "social media accounts to air . . . [customer] dissatisfaction," and which are "not part of a larger discussion," simply are not in the public interest. *Id.* (denying anti-SLAPP motion brought by social media influencer when underlying defamation suit was premised upon his negative online reviews of a bakery); *see also Premier Brain & Spine Institute, Inc. v. Cudia*, 2022 WL 3222097, at *3 (Cal. Ct. App. Aug. 9, 2022) ("[D]efendant's online reviews were limited to her interactions with plaintiffs . . . [she] did not invite or promote public discussion about any broader issue of public interest. [She] simply left negative reviews after receiving what she believed was neglectful treatment.").

At bottom, Defendants' statements here "complain[ed] about a [vehicle] order. [They] did not like the [vehicle] and . . . did not like the service. Those are not issues of public interest." *Woodhill Ventures, LLC*, 68 Cal. App. 5th at 636. Accordingly, the Court finds that Defendants' statements are not protected under the aegis of the anti-SLAPP statute. And because Defendants did not carry their burden on the first analytical prong, the Court need not proceed to the second. Defendants' request to strike the FAC is denied.

    2.    *Failure to State a Claim*

In the alternative, Defendants ask the Court to dismiss Plaintiff's claims under Rule 12(b)(6). The FAC asserts three claims: (1) defamation; (2) trade libel; and (3) breach of confidentiality. The Court addresses each claim in turn, after briefly discussing which of Defendants' statements are properly categorized as defamation, and which are trade libel.

    *a.*    *Defamation vs. Trade Libel*

"Not every statement that is false and injurious constitutes [defamation]." *Starbuzz Tobacco, Inc. v. Abdallah*, 2011 WL 13214313, at *3 (C.D. Cal. Nov. 2, 2011). Defamation involves a statement that "cast[s] aspersions upon the plaintiff . . . [by] call[ing] into question the plaintiff's honesty, integrity or competence or reasonably impl[ies] any reprehensible personal characteristic." *Polygram Records, Inc. v. Super. Ct.*, 170 Cal. App. 3d 543, 550 (1983). An action for defamation, therefore, is intended to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

"protect the personal reputation of the injured party." *Id.* at 549. Trade libel, on the other hand, targets "false statements simply indicating that plaintiff's business goods were of inferior quality," and exists to "protect economic interests of the injured party against pecuniary loss." *Id.* at 549–50. For example, a statement that a car manufacturer cared more about "shielding their public image" than "protecting their customers" could be defamatory, as it implies that the manufacturer has a reprehensible personal characteristic. *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp.2d 1035, 1046 (C.D. Cal. 1998). On the other hand, statements that the manufacturer's vehicles were unsafe would simply be a criticism of a dangerous product, and therefore would not be defamatory. *Id; see also Polygram Records*, 170 Cal. App. 3d at 550 ("It might be possible to imply some accusation of . . . incompetence at least, in nearly every imputation directed against a business or product. The courts have gone to some lengths, however, in refusing to do so, particularly where the most that can be made out of the words is a charge of ignorance or negligence.")

Identifying whether a defendant's statements are defamation or trade libel is critical, because the two claims have different elements. To establish trade libel, a plaintiff must always allege actual malice and special damages. *See Melaleuca, Inc. v. Clark*, 66 Cal. Appl. 4th 1344, 1350 (1998). Defamation claims brought by a private party often do not require such a showing. *See Wong v. Jing*, 189 Cal. App. 1354, 1369 (2010) (stating the elements of a defamation claim). The Court thus categorizes Defendants' statements below, starting with those that constitute defamatory statements.

        i.      <u>Defamatory Statements</u>

Certain statements made by Defendants unquestionably fall within the ambit of defamation because they imply (or directly state) that Plaintiff is dishonest, lacking integrity, or fraudulent. Those statements (the "Defamatory Statements") are:

- An Instagram story where Kelley accused Plaintiff of "lying" and knowingly selling "toxic" trailers. (FAC ¶ 60.)
- An Instagram video where Kelley stated that Plaintiff "doesn't want to take [the Trailer] back and they said it's just not that bad. This week we are going to be announcing their name . . . They just sent us a document that's like a novel that they'd would [sic] like us to sign to take it back because they don't want anyone to know about it." (*Id.* ¶ 76.)
- A comment attached to the same video stating that Plaintiff "know[s] their vehicle is unsafe . . . [t]hey took a look at the horrific air quality results and said they don't look that bad." (*Id.* ¶ 77.)
- A comment on another Instagram video, wherein Kelley states "[t]he company has not wanted to take back the unit which is very troubling to me." (*Id.* ¶ 81.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

- A YouTube video wherein Kelley "accused LV of not doing the right thing" by refusing to take the trailer back and test it. (*Id.* ¶ 85.)
- A comment made by Robinson on an article reviewing Living Vehicle trailers, stating that Plaintiff "has not wanted to provide a full refund and to take back the trailer" and that Plaintiff "wants us to stop talking about it." (*Id.* ¶ 91.)

These statements all either attack Plaintiff's honesty—by accusing it of lying or knowingly selling toxic products—or its integrity, by repeatedly informing viewers that Plaintiff refused to buy back the Trailer, refused to test the Trailer, and insisted upon Defendants' silence. As such, the Court will consider these statements (and these statements only) in analyzing Plaintiff's defamation claim.

    ii.  Trade Libel Statements

All of the other statements alleged in the FAC (the "Trade Libel Statements") relate solely to the quality of the Trailer, rather than to Plaintiff's alleged reprehensibility. For example, the vast majority of statements involve Kelley claiming that the Trailer had "severe" or "extremely high" VOCs, that she was suffering from formaldehyde poisoning caused by the Trailer, that she was suffering long-term deleterious health effects from the Trailer, or that she and Robinson could only enter the Trailer while wearing gas masks. (*See, e.g.*, FAC ¶¶ 50, 56, 76.) Because these statements relate to the quality of Plaintiff's product, they are not defamatory. The Court will therefore consider them only in analyzing Plaintiff's trade libel claim.

    b.  *Defamation*

In order to state a claim for defamation, a plaintiff must allege: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Jing*, 189 Cal. App. 4th at 1369. A statement must contain a provable falsehood to be defamatory, so "courts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *Id.* at 1370.

Defendants argue that Plaintiff cannot state a defamation claim for three reasons. First, they aver that their statements are mere opinions rather than factual assertions, and thus not actionable. Second, even if their statements are factual assertions, Defendants posit that the statements are not false. Finally, they argue that Plaintiff must sufficiently allege actual malice and has failed to do so. The Court analyzes each argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

                i.       <u>Opinion v. Factual Assertion</u>

      Defendants argue that their statements "revolve around Defendants' opinion that the elevated chemical levels in the trailer may have caused or contributed to their illness" and are therefore mere opinions. (Defs.' Mot. Strike or Dismiss at 11.) But this argument addresses only the Trade Libel Statements, *i.e.*, the statements disparaging the quality of the trailer. As previously discussed, those statements are not defamatory in nature, and therefore Defendants' argument is irrelevant. By contrast, the Defamatory Statements—those that accuse Plaintiff of lying, knowingly selling an unsafe vehicle, and refusing to negotiate for a refund in good faith—are provably false factual assertions. As such, those statements are actionable.

                ii.       <u>Falsity of the Assertions</u>

      Defendants next argue that the FAC's own allegations establish the truth of the Defamatory Statements, and therefore Plaintiff cannot plead falsity. The Court disagrees.

      According to the FAC, Defendants made posts stating that Plaintiff lied to them and knowingly sold toxic products, but Plaintiff unequivocally alleges that it does not sell dangerous trailers (and thus, by extension, did not lie to Plaintiffs regarding product safety). (*See* FAC ¶¶ 94–102 (summarizing the results of a test Plaintiff conducted on a trailer indicating that its trailers have low levels of VOCs).) As to the statements accusing Plaintiff of deplorable customer service—that it refused to issue a refund, refused to inspect the Trailer, and sought to silence Defendants—the FAC alleges that Plaintiff engaged Defendants in good faith to reach an amicable settlement. (*See, e.g., id.* ¶¶ 70–72.) The FAC thus sufficiently alleges that the Defamatory Statements are false.

                iii.       <u>Actual Malice</u>

      Finally, Defendants argue that Plaintiff must show that Defendants acted with actual malice and have failed to do so. The Court disagrees that any such showing is required.

      "[P]rivate persons are not necessarily required to prove actual malice to recover for defamation." *Vegod Corp. v. Am. Broad. Cos., Inc.*, 25 Cal. 3d 763, 768 (1979). However, a private figure who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues . . . assume[s] special prominence in the resolution of public questions" and therefore must also allege (and ultimately prove) that defamatory statements were made with actual malice. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Such a private actor is called a "limited-purpose public figure."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

Defendants argue that because Plaintiff is a "commercial enterprise that promotes itself using matters of public controversy" such as health and the environment, Plaintiff is a limited-purpose public figure and therefore must allege actual malice. But the California Supreme Court has foreclosed such an argument: "While availability of goods for sale and their quality are matters of public interest . . . [c]riticism of commercial conduct does not deserve the special protection of the actual malice test." *Vegod Corp.*, 25 Cal. 3d at 769–70. A "person in the business world advertising his wares does not necessarily become part of an existing public controversy," and therefore those "assuming the role of business practice critic do not acquire the First Amendment privilege to denigrate such entrepreneur." *Id.* at 770.

Plaintiff may well publicly "promote[] itself as an environmentally-friendly and health-conscious alternative [that] appeals to consumers who believe in . . . renewable energy and healthy design." (Defs.' Mot. Strike or Dismiss at 13.) But advertising one's products does not come close to "voluntarily injecting oneself" into a public controversy. *Gertz*, 418 U.S. at 351. Plaintiff is thus not a limited-purpose public figure and need not allege actual malice.

      iv.  Conclusion

For the foregoing reasons, Defendants' arguments for dismissal of the defamation claim fail. Plaintiff's claim—premised solely upon the Defamatory Statements—survives.[4]

     c.  *Trade Libel*

The Court now proceeds to Plaintiff's trade libel claim. To establish a claim for trade libel, Plaintiff must allege: (1) a publication; (2) that induces others not to deal with the plaintiff; and (3) resulting special damages. *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988). Any special damages must be specifically alleged, and a plaintiff "may not rely on a general decline in business arising from the [alleged] falsehood, [but] must instead identify particular customers and transactions of which it was deprived as a result of the libel." *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004).

Plaintiff has failed to sufficiently plead special damages. Rather than allege that it lost any customers, Plaintiff relies on the fact that Kelley is "viewed as a persuasive authority on LV trailers" and

---

[4] Defendants object to certain items of evidence that Plaintiff either filed or cited to in support of its Opposition to the Motion to Strike or Dismiss. (ECF No. 57.) Because the Court has not relied on any of the evidence that Defendants object to, the objections are **DENIED as moot**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

that her followers have posted negative comments about Plaintiff on her social media posts. (Pl.'s Opp'n to Mot. Strike or Dismiss at 18, ECF No. 62.) While Plaintiff also notes that one specific customer has raised concerns due to Kelley's videos, it has *not* expressly alleged that the customer cancelled his or her order. (*See* FAC ¶¶ 108–110 (describing customer who "express[ed] concerns about moving forward" with their Living Vehicle purchase and who "wanted assurances about the quality of the trailers").)

A trade libel claim requires allegations of "specific pecuniary loss," and it is not sufficient to plead "lost business opportunities, relationships, and reputation." *ConsumerDirect, Inc. v. Pentius, LLC*, 2022 WL 16949657, at *6 (C.D. Cal. Aug. 25, 2022). Plaintiff here alleges only the latter. Accordingly, the Court dismisses Plaintiff's trade libel claim.

          d.     *Breach of Confidentiality*

Finally, the Court turns to Plaintiff's claim for "breach of confidentiality." Although the allegations supporting this claim are muddied, Plaintiff appears to be making a claim for breach of contract: Plaintiff avers that Robinson "signed an NDA . . . which precluded Robinson from disclosing Confidential Information," but that Defendants breached the provision when they "published public statements online . . . disclosing specific and confidential terms" of the draft settlement agreement Plaintiff had sent. (FAC ¶¶ 138–142.)

To sufficiently allege a breach of contract, Plaintiff must plead: "(1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." *Walsh v. Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (1998). Plaintiff argues that Defendants breached the NDA because the NDA forbade them from disclosing, *inter alia*, "proposals." (Defs.' Mot. Dismiss, Robinson Decl. Ex. 1 at 1.) According to Plaintiff, the draft settlement agreement it sent to Defendants constituted such a proposal.

Viewed in isolation, such an interpretation may be tenable. However, contract provisions are not viewed in isolation, and must be interpreted "in the context of the entire agreement's language, structure, and stated purpose." *Trustees of S. Cal. IBEW-NECA Pension Trust Fund v. Flores*, 519 F.3d 1045, 1047 (9th Cir. 2008). The language surrounding the word "proposal" in the NDA indicates that the contract relates to Plaintiff's trade secrets. After all, the NDA forbids the disclosure of "proprietary information," consisting of, *inter alia*, "plans, forecasts, research, process, ideas, proposals, schematics, financial information, [and] marketing strategies." (Defs.' Mot. Strike or Dismiss, Robinson Decl. Ex. 1 at 1.) Given the clear language in the contract, the Court finds Plaintiff's suggestion—that "proposals" applies to a settlement agreement entirely unrelated to Plaintiff's trade secrets—not credible. Therefore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

Plaintiff has failed to sufficiently allege a breach of contract, so its "breach of confidentiality" claim fails.[5]

### 3. Conclusion

For the foregoing reasons, the Court finds that Plaintiff has sufficiently stated its defamation claim. However, it dismisses Plaintiff's trade libel and breach of confidentiality claims.

### B. Motion for Preliminary Injunction

Having determined that at least one of Plaintiff's claims survives dismissal, the Court now turns to Plaintiff's Motion for Preliminary Injunction. This Motion asks the Court to "order Defendants to remove and take down all posts, comments, and videos containing false and disparaging statements and to refrain from making any further statements, comments, posts, or videos about, concerning, or referencing Living Vehicle." (Pl.'s Mot. Preliminary Injunction at 20.) Defendants argue that such an injunction is a presumptively unconstitutional prior restraint on speech, and Plaintiff has not made a showing that its harm is sufficiently severe to overcome the presumption. The Court agrees.

A prior restraint is a "judicial order[] forbidding certain communications," and may refer either to injunctions that restrict future speech or require takedowns of currently-published speech. *Alexander v. United States*, 509 U.S. 544, 550 (1993); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 746–47 (9th Cir. 2015) ("[A] takedown order . . . is a classic prior restraint of speech."). Prior restraints "are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). The presumption against prior restraints is heavy, and a court may only impose one if: "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest, (2) the [injunction] is narrowly drawn, and (3) less restrictive alternatives are not available." *Levine v. U.S. Dist. Ct.*, 764 F.2d 590, 595 (9th Cir. 1985). It is extremely difficult for a plaintiff to overcome the presumption on a motion for preliminary injunction, because "[w]here there has been no trial and no determination on the merits that there is actionable defamation . . . the court cannot prohibit a party from making statements" that are only arguably defamatory. *Elec. Frontier Found. v. Global Equity Mgmt. (SA) Pty. Ltd.*, 209 F. Supp. 3d 923, 943, at *12 n.10 (N.D. Cal. 2017).

---

[5] Even if Plaintiff had sufficiently pleaded a breach, it is unclear to the Court how the NDA could be enforced against Kelley when it was signed only by Robinson.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-06226-RGK-AS | Date | January 20, 2023 |
|---|---|---|---|
| Title | *Living Vehicle, Inc. v. Megan Kelley, et al* | | |

Plaintiff does not meaningfully grapple with the constitutional issue raised by its Motion, other than to state that the right to free speech is not absolute. (*See* Pl.'s Reply ISO Mot. Preliminary Injunction at 1–2, ECF No. 60.) Nor can it. "No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices . . . warrants use of the injunctive power of a court." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). While Plaintiff seems to imply that the threats to its business interests are a "clear and present danger" justifying a prior restraint, it is badly mistaken. *Levine*, 764 F.2d at 595. Examples of such danger include statements damaging to military recruiting in times of war, statements that reveal critical military information during a war, or a statement that incites violence—not accusations of business impropriety by a social media influencer. *See Near v. Minn. ex rel. Olson*, 283 U.S. 697, 716 (1931).

With very few exceptions, the "remedy for defamation is a damages action after publication," not a preliminary injunction. *Allen v. The Ghoulish Gallery*, 2007 WL 1555739, at *3 (S.D. Cal. May 23, 2007). Plaintiff has not demonstrated that its case is exceptional. Its Motion for Preliminary Injunction is therefore denied.[6]

**V.    CONCLUSION**

For the foregoing reasons, the Court:

- **GRANTS in part** Defendants' Motion to Dismiss and dismisses Plaintiff's claims for trade libel and breach of confidentiality. Plaintiff's defamation claim survives.
- **DENIES** Plaintiff's Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer

---

[6] Because the constitutional issue is dispositive, the Court does not analyze the *Winter* factors.